**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**KIMBERLY COPELAND and**
**KIMBERLY COPELAND,** *as parent*
*and guardian of minor child, M.C.*,          **Case No.:**

              **Plaintiffs,**

    **vs.**

**BAILEY'S GYM, INC.**

              **Defendant.**

_____

**COMPLAINT**
**Demand For Jury Trial**

**COMES NOW**, the Plaintiffs, Kimberly Copeland and Kimberly Copeland, *as parent*

*and guardian of minor child, M.C.,* by and through their undersigned counsel, brings this

lawsuit seeking declaratory and injunctive relief, against Defendant, Bailey's Gym, Inc.

("Bailey's") for violations of  Title III of the Americans with Disabilities Act. The Defendant

denied the Plaintiffs full and equal enjoyment of Defendant's services, facilities, and

privileges. Defendant also failed to make reasonable modifications in policies, practices, or

procedures, and failed to take such steps as are necessary to ensure Plaintiffs were not

excluded, denied services, or otherwise treated differently during when attempting to use the

services of Bailey's Gym.

**JURISDICTION AND VENUE**

  1.      This Court has jurisdiction over the actions pursuant to 28 U.S.C. § 1331,

1343.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because (1) the Defendant is located in this district, and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

## PARTIES

### PLAINTIFFS

3.      Plaintiff, KIMBERLY COPELAND ("Ms. Copeland") is and was, at all times material hereto, a resident of Duval County, Florida. Ms. Copeland is not disabled, but provides care for her minor child, M.C., who has autism.  As such she is a qualified companion of a person with a disability.

4.      Plaintiff, M.C. is and was, at all times material hereto, a resident of Duval County, Florida. M.C. is the minor child of Ms. Copeland and has autism, and a number of other disabilities.

### DEFENDANT

5.      Defendant, BAILEY'S GYM, INC. ("Bailey's") is located at 3000-2 Dunn Avenue, Jacksonville, Florida 32218, and is principally engaged in providing a gymnasium, and or other place of exercise or recreation. Bailey's is a place of public accommodation as defined by Title III of the ADA, 42 U.S.C. § 12181(7) (L).

### FACTUAL ALLEGATIONS

6.      Ms. Copeland is a single mother who works for the school board, and operates a small, non-profit foundation that she uses as a vehicle to educate families in the African American community who have children with autism.

7.      As a mother of a child with autism, Ms. Copeland has educated herself

extensively about accommodating her child, along with learning how to navigate through a society which unfortunately often excludes people with autism.

8.   M.C. is an 11 year old, autistic girl, with epilepsy and mild cerebral palsy. M.C. attends Oakhill Academy in Jacksonville, a school which specializes in educating children on the spectrum and with autism. M.C. enjoys playing on her iPad, and spends a great deal of time with her mother, uncle and her aunty.

9.   Ms. Copeland has never been asked to remove M.C. from a public place due to M.C.'s behavior.

10.   Ms. Copeland had recently lost a significant amount of weight, and was looking for a health club to join to maintain her weight loss.  In or around the beginning of 2019 Bailey's opened a new facility on Dunn Avenue, Jacksonville, right down the street from where Ms. Copeland and M.C. live.

11.   On February 10, 2019, Ms. Copeland toured Bailey's with M.C. to explore the possibility of becoming a member. Ms. Copeland was excited about becoming a member, because it was an easy commute for her, and as a single mother, they offered child care services for M.C.

12.   Plaintiff *specifically* had a discussion with the staff at Bailey's about M.C.'s autism, and utilizing the play area at the facility while she worked out at the gym. Ms. Copeland told Bailey's she was available to answer any questions they had about M.C., or working with a child with autism. The staff assured Ms. Copeland that they would accommodate M.C..

13.     Ms. Copeland signed up for a membership, and paid an additional fee to cover the costs of the child care services at the gym for M.C.. The total membership fee per month was approximately $38.00.

14.     The contract executed for membership contained a "Children's Play Area Regulations and Release Waiver" which included a number of rules for the children's play area. The children's play area accepts children as young as one (1) year old.

15.     The exercise classes offered by Bailey's range approximately from thirty (30) to sixty (60) minutes. Ms. Copeland planned to limit her work outs to an hour, which would also allow for M.C. to be in the children's play area for short periods of time.

16.     On Monday, February 11, 2019, Ms. Copeland returned to Bailey's, as a new member, and worked out, while M.C. utilized the children's play area without issue.

17.     Ms. Copeland's second visit to Bailey's was on February 13, 2019. Ms. Copeland checked M.C. into the children's play area, and participated in a Zumba class. While in class she was approached by a staff member who told her there was an incident involving M.C.. The staff member acted as though M.C. was a monster. Ms. Copeland left class, and went to the children's play area to check on M.C., and found her calm in the room, with other children playing about in the play area.

18.     There were two (2) staff members in the children's play area, and they told Ms. Copeland M.C. had pushed a crying child down, and would be required to leave Bailey's. Ms. Copeland and M.C. left.

19.     On February 14, 2019, Ms. Copeland received a call from Michael a manager at Bailey's. Michael said he called to find out if M.C. was ok, but then flipped the

conversation and asked if this *incident* would happen again. Ms. Copeland told Bailey's it may, or may not happen again, and began a candid discussion about the symptoms of autism.

20.     During the call Ms. Copeland discussed the accommodation of modifying the layout of the play area, and for Bailey's to consider using a portable partition to separate the young children (ages approximately 1-3) from the older children, who are as old twelve (12). This would allow the older children, like M.C., to engage in the more age appropriate activities offered by Bailey's e.g. video games, and be separated in some way from the babies who climb on the plastic slides and play with the infant toys. Michael neither accepted nor declined this request for an accommodation.

21.     On February 15, 2019, Ms. Copeland returned to Bailey's to utilize the gym and childcare services. Ms. Copeland purposely talked to the children's play area staff, because they were different staff members from February 13th, and told them to be aware of crying children and how it may trigger a response from M.C., along with telling them it's ok to tell M.C. "NO" if necessary.

22.     Less than one hour into her workout, a staff member approached Ms. Copeland yelling, in a very public and embarrassing manner, something to the effect of *you need to come and get your child, she is attacking other kids*. Ms. Copeland left the workout area, ashamed and embarrassed by the public display, and headed to the children's play area to find M.C. coloring at the desk, and everything else calm in the room.

23.     Ms. Copeland was then told "she", referring to M.C., could not return to Bailey's. Ms. Copeland reminded the staff her membership fee included use of the children's

play area. Bailey's told Ms. Copeland that "corporate" said M.C. can't return, and that a meeting with a manager was needed before Bailey's would consider allowing M.C. to return.

24.     On Monday, February 18, 2019, Ms. Copeland called Bailey's and scheduled a meeting with Michael, the manager. She then met with Michael around noon on the same day. Ms. Copeland asked to record the meeting, but that request was declined.

25.     As a result of her request to record the meeting, Michael suggested Ms. Copeland speak with Stan, the general manager, who will be available the next day. Although the plans were for Ms. Copeland to meet with Stan, Ms. Copeland used the opportunity to discuss four (4) reasonable accommodations for M.C..

26.     One accommodation was for Bailey's to modify the layout of the play area, and use a portable partition to separate the young children. This was the same accommodation discussed by telephone the day before. That requested accommodation was denied.

27.     Ms. Copeland also asked if M.C. could bring in outside toys, to include her iPad, into the children's play area, because M.C. can stay thoroughly engaged on her iPad for up to two (2) hours. Bailey's denied that request, relying upon a policy which prohibits the use of outside toys in the play area. However, a prohibition on the use of outside toys is not listed on the Children's Play Area Regulations and Release Waiver executed by Ms. Copeland.

28.     Ms. Copeland also offered to have a close friend, known as M.C.'s "aunty" to use one of Ms. Copeland's free guest passes and watch M.C. in the children's area to catalyze M.C.'s acclimation to the area. That accommodation was also denied.

6

29.   Ms. Copeland also offered to have M.C.'s Applied Behavioral Analysis (ABA) Therapist, who is highly trained and works with M.C. at her specialized school for autistic children, to come and observe M.C. in the children's play area and make recommendations to accommodate M.C. That request was denied.

30.   Ms. Copeland also showed Michael a picture of noise canceling headphones she purchased for M.C. to wear when in the children's play area. The headphones would reduce M.C.'s noise exposure.

31.   Michael told Ms. Copeland the requests were denied, and she needed to speak to the general manager, Stan.

32.   However, Ms. Copeland wanted to use the gym she was paying for. In order for Ms. Copeland to be allowed back before her meeting with the general manager, she was required to arrive thirty (30) minutes before her spin class and monitor M.C.'s behavior.

33.   Later that same day, February 18, 2019, Ms. Copeland returned with M.C. and monitored her behavior in the children's play area, and there were no issues. She then left to attend a spin class.

34.   Approximately twenty-five (25) minutes into the class, she was notified by staff that M.C. pushed a child. Ms. Copeland returned to the play area, and spoke to the parent of the child pushed, and the child's mother said not to worry that everything was fine with her child.

35.   Ms. Copeland was then told by Michael that she needed to leave the facility, and speak with the general manager, Stan, the next day.

36.     On Tuesday February 19, 2019, Ms. Copeland met with both Stan and Michael. Uncomfortable with the meeting area, Ms. Copeland requested a more private area to discuss M.C.'s medical condition, and show some medical documents, and other information to help them understand the simple accommodations she was requesting for M.C.. Stan said something to the effect of *I have already heard enough about your daughter, no need to show me anything.*

37.     Ms. Copeland again explained the four (4) potential accommodations or modifications that could potentially rectify the behavior. e.g. use of outside toys in the play area, allowing  M.C.'s aunty to come and watch M.C., allow M.C.'s  school ABA therapist to evaluate M.C. in the play area and make recommendations to accommodate, and or partition the room to separate the young children from the older children. But all four (4) accommodations were denied. Bailey's even refused to *try* any of the accommodations requested by Ms. Copeland.

38.     Stan told Ms. Copeland she is welcome back, but not her daughter, because her daughter is not a member of the gym and has no right to use the facility.

39.     It was decided, under duress, that Ms. Copeland's membership would be canceled, with a cancellation reason code as "violation of club rules". Ms. Copeland asked about the pejorative and incorrect coding and was told "violation of club rules"  was the only code they had, and she would need to call the corporate office to have it changed.

40.     Stan also told Ms. Copeland she should be glad Bailey's was not charging a cancellation fee, since Ms. Copeland had already received her money's worth from Bailey's.

41.     Ms. Copeland left the gym, disappointed, humiliated and embarrassed from the treatment that she and M.C. received at Bailey's. Ms. Copeland broke down and cried in her vehicle, and called her brother to find some solace.

42.     This discriminatory event caused emotional harm and degradation to Plaintiffs, who were trying to enjoy services at Bailey's facility.

43.     **Although not legally required to do so, in good faith Plaintiffs attempted to rectify this matter prior to filing this Complaint.**

44.     Plaintiffs plan to return to this same gym, because it is located only six (6) miles from Ms. Copeland's home, and she is continuing with her weight loss and fitness goals.

45.     Ms. Copeland is not denying that M.C. pushed a child. Ms. Copeland is seeking a simple accommodation and or modification from Bailey's to allow M.C. to use the services of the play area, which is a service included in her membership dues.

46.     As a result of Defendant's actions described above, Plaintiffs suffered irreparable loss and injury including, not limited to humiliation, embarrassment, emotional distress, and a deprivation of their rights to non-discrimination on the basis of M.C.'s disability, and from being a qualified companion to an individual with disabilities.

**COUNT I**

**TITLE III OF THE AMERICAN WITH DISABILITIES ACT**

47.     Plaintiffs incorporate and re-allege paragraphs ¶¶ 1-46 as it fully set forth herein.

48.    Defendant is a corporation covered by Title III of the ADA, 42 U.S.C. § 12101, *et seq.* Defendant is principally engaged in the business of providing health and fitness, and is a place of public accommodation as defined by Title III of the ADA, 42 U.S.C. § 12181(7).

49.    Title III of the Americans with Disabilities Act  states that no person shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations by any person who owns or operates a place of public accommodation. 42 U.S.C. § 12182.

50.  Defendant denied Plaintiffs the opportunity to benefit from its services, facilities, privileges, advantages, and accommodations that were equal to that afforded to other individuals who are not disabled in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

51.  Defendant intentionally failed to make reasonable modifications in its policies, practices, and/or procedures, upon repeated requests,  as necessary to afford Plaintiffs with its goods, services, facilities, privileges, advantages, and/or accommodations in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

52.  A public accommodation shall not exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. 28 C.F.R. § 36.205. Ms. Copeland, as M.C.'s mother, is a qualified companion protected by the ADA.

53.     As a result of Defendant's actions described above, Plaintiffs suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of their rights to non-discrimination on the basis of M.C.'s disabilities.  In engaging in this unlawful conduct described above, Defendant acted maliciously to damage the rights and dignity of Plaintiffs.

## Relief Requested

**WHEREFORE,** Plaintiffs respectfully request the following relief:

A.     That the Court assume jurisdiction;

B.     Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiffs to discrimination in violation Title III of the Americans with Disabilities Act;

C.     Enjoin Defendant from any policy, procedure, or practice that will deny M.C., and her qualified companion, equal access to and an equal opportunity to participate in and benefit from Defendant's services;

D.     Order Defendant to train its employees about Plaintiffs' rights, and the rights of individuals, like M.C. who have autism to access services at Bailey's facility:

E.     Order Defendant to provide a reasonable accommodation, and or modification to allow Plaintiffs to use Bailey's services;

F.     Award reasonable attorney's fees, expenses and costs of suit; and

G.     Grant such other relief as the Court may deem equitable and just under the circumstances.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues which can be heard by a jury.

DATE: September 1, 2019.

Respectfully submitted,
MORGAN AND MORGAN

*/s/ Sharon Caserta*
Sharon Caserta, Esq.
Florida Bar No.: 0023117
Morgan & Morgan
Deaf /Disability Rights
76 South Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 245-1121 V/TTY
(904) 361-0078 (Voice)
(904) 361-4305 (Facsimile)
scaserta@forthepeople.com
*Trial Counsel for Plaintiffs*
